## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ARIEL DALTON,

      Plaintiff,

v.                                   Case No. 8:25-cv-1339-KKM-SPF

CITY OF LARGO and
OFFICER STEPHANIE BLITZ,

      Defendants.

_____

### ORDER

The City of Largo and Officer Stephanie Blitz move to dismiss this § 1983 action, which arises from Plaintiff Ariel Dalton's warrantless arrest. Mot. to Dismiss (MTD) (Doc. 14). For the reasons below, I grant this motion.

## I.    BACKGROUND

On November 9, 2024, Dalton was driving to a friend's house for dinner and needed to pick up her son from daycare. Compl. (Doc. 1) ¶ 8. On the way there, Dalton encountered a road blocked by an ambulance. *Id.* ¶ 9. After waiting for five to ten minutes, Dalton approached the paramedics at a nearby house and asked them

to move the ambulance. *Id.* ¶ 10. Dalton stood at the rear of the carport and did not attempt to enter either the carport or the ambulance. *Id.* ¶ 11. The ambulance driver informed Dalton that he would move the vehicle after loading the patient, so Dalton returned to her vehicle and waited. *Id.* ¶¶ 12–13.

After the patient was loaded into the ambulance, Dalton again approached to request that the vehicle be moved. *Id.* ¶ 14. About two minutes later, Officer Blitz appeared on the scene. *Id.* ¶ 15. After speaking with the ambulance attendants for about two minutes, Blitz arrested Dalton. *Id.* ¶¶ 16–17. On the way to the Pinellas County Jail, Blitz told Dalton that she arrested her "because [Dalton] thought [she was] better than [Blitz]." *Id.* ¶ 18. Dalton was charged with burglary of an occupied dwelling, burglary of a conveyance, and approaching a first responder with specified intent after a warning. *Id.* ¶ 21; *see* (Doc. 1-1). These charges were later dropped. Compl. ¶ 22; (Doc. 1-1).

Dalton initiated this action. Dalton pleads four claims: (1) malicious prosecution against the City of Largo and Officer Blitz (Count I); (2) false imprisonment against the City of Largo and Officer Blitz (Count II); (3) an unreasonable seizure in violation of the Fourth Amendment against the City of

Largo and Officer Blitz (Count III); and negligent supervision against the City of Largo (Count IV). *Id.* ¶¶ 23–54. The defendants move to dismiss. *See* MTD.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss" for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"In analyzing the sufficiency of the complaint," I may consider "well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004), *abrogated on other grounds by Twombly*, 550 U.S. 544. The complaint's factual allegations are accepted "as true" and construed "in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

## III.    ANALYSIS

Both the City of Largo and Blitz move to dismiss. I start with the claims against the City and then move to the claims against Blitz.

### A. Claims against the City of Largo are Dismissed

Dalton pleads against the City three claims under § 1983 and one state law claim. All four must be dismissed.

Starting with the federal claims, a municipality "does not incur § 1983 liability for injuries caused solely by its employees." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). Instead, "to impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Id.*

Dalton fails to allege in her complaint any such custom or policy. Thus, dismissal is required. *See id.*

In her response, Dalton argues that her § 1983 claims are sufficient because she alleges that the City failed to properly supervise Blitz. Resp. (Doc. 15) at 2. But this allegation is insufficient under Eleventh Circuit precedent. To establish the requisite "deliberate indifference," a plaintiff "must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). Blitz does not allege that any such evidence exists here. Accordingly, her § 1983 claims against the City fail.

Dalton's negligent supervision claim also fails. Negligent supervision or retention "occurs when during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions such as investigation, discharge, or reassignment." *Dep't of Env't. Prot. v. Hardy*, 907 So. 2d 655, 660 (Fla. 5th DCA 2005). "Put slightly differently, negligent supervision exists when the defendant 'negligently placed [the plaintiff/purported victim] under the supervision of [an employee], when [the defendant] either knew or should have known that [the

employee] had the propensity to commit [the torts committed].'" *Acts Ret.-Life Cmtys. Inc. v. Est. of Zimmer*, 206 So. 3d 112, 114 (Fla. 4th DCA 2016) (alterations in the original) (quoting *Malicki v. Doe*, 814 So. 2d 347, 362 (Fla. 2002)). "The plaintiff must allege facts sufficient to show that once an employer received actual or constructive notice of problems with an employee's fitness, it was unreasonable for the employer not to investigate or take corrective action." *Hardy*, 907 So. 2d at 660. Of course, "not only must the employer owe a duty to the plaintiff, but the breach of that duty must be the proximate cause of the plaintiff's harm." *Id.* As a result, there "must be a connection and foreseeability between the employee's employment history and the current tort committed by the employee." *Id.* at 661.

Dalton pleads no facts that would indicate the City was on actual or constructive notice "of problems with [Blitz] that indicated [her] unfitness." *Hardy*, 907 So. 2d at 660; *see* MTD at 8 ("[T]he Plaintiff's Complaint is devoid of any facts that would indicate that the City knew or should have known of any alleged misconduct or unfitness from Officer Blitz."). Therefore, Dalton's negligent supervision claim fails.

### B. Claims against Blitz are Dismissed

Dalton pleads malicious prosecution, false imprisonment, and false arrest claims against Blitz. Compl. ¶¶ 23–45. Blitz argues that she is entitled to qualified immunity and thus Dalton's claims must be dismissed. *See* MTD at 8–15. Blitz also argues that Dalton fails to plausibly allege a violation of her Fourth Amendment rights. *See id.* at 15–16. I start with the qualified immunity standard and then move to Blitz's arguments regarding each of Dalton's claims. For the reasons below, Dalton fails to plausibly allege that Blitz violated her constitutional rights, so Dalton's claims are dismissed without prejudice.

#### 1. Qualified Immunity Standard

"The qualified immunity defense shields 'government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (omission adopted) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

"To receive qualified immunity, [a] public official 'must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting

*Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee*, 284 F.3d at 1194.

"To overcome a qualified immunity defense, the plaintiff must make two showings." *Corbitt*, 929 F.3d at 1311. The plaintiff must first show "that the defendant violated a constitutional right." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199 (11th Cir. 2007). The plaintiff must then "show that the violation was clearly established." *Id.* "A right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Gilmore v. Ga. Dep't of Corr.*, 144 F.4th 1246, 1258 (11th Cir. 2025) (en banc). For this second inquiry, the key question "is whether the state of the law gave the defendants 'fair warning' that their alleged conduct was unconstitutional." *Vaughan v. Cox*, 343 F.3d 1323, 1332 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

8

Ordinarily, "it is proper to grant a motion to dismiss on qualified immunity grounds when the 'complaint fails to allege the violation of a clearly established constitutional right.'" *Corbitt*, 929 F.3d at 1311 (quoting *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002)). "Once an officer has raised the defense of qualified immunity, the burden of persuasion on that issue is on the plaintiff." *Id.* (quoting *St. George*, 285 F.3d at 1337).

### 2. **Dalton's Malicious Prosecution Claim is Dismissed**

To succeed on a malicious prosecution claim, a plaintiff must prove both "(1) the elements of the common-law tort of malicious prosecution and (2) a violation of his Fourth Amendment right to be free from unreasonable seizures." *Blue v. Lopez*, 901 F.3d 1352, 1357 (11th Cir. 2018).[1] Or, as the Eleventh Circuit recently articulated, a plaintiff must prove: (1) "the legal process justifying [the plaintiff's] seizure was constitutionally infirm"; (2) the "seizure would not otherwise be justified without legal process"; and (3) "the criminal proceedings against [the

---

[1] "[T]he constituent elements of the common law tort of malicious prosecution include[]: (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Paez v. Mulvey*, 915 F.3d 1276, 1285 (11th Cir. 2019) (alterations in the original) (quoting *Wood v. Kesler*, 323 F.3d 872, 882 (11th Cir. 2003)).

plaintiff] terminated in his favor." *Sylvester v. Fulton Cnty. Jail*, 94 F.4th 1324, 1329 (11th Cir. 2024) (alterations in the original) (quoting *Luke v. Gulley*, 975 F.3d 1140, 1144 (11th Cir. 2020)).

A showing of either probable cause or arguable probable cause defeats a malicious prosecution claim. *See id.* at 1331. The probable cause inquiry regarding malicious prosecution focuses on "the legal process that justified the plaintiff's arrest and the defendant's role in that process." *Id.* at 1330. Therefore, the proper analysis requires a court to "remove from the affidavit any false or misleading inculpatory statements, insert any omitted exculpatory information, and then assess whether the corrected affidavit is still able to establish at least arguable probable cause." *Id.* at 1331. To assess probable cause, a court must "look . . . to the elements of the charged crime." *Butler v. Smith*, 85 F.4th 1102, 1116 (11th Cir. 2023). "Probable cause requires facts that allow 'a person of reasonable caution to believe' that 'there was a substantial chance' that [the defendant committed the charged offense]." *Sylvester*, 94 F.4th at 1331 (quoting *Garcia v. Casey*, 75 F.4th 1176, 1186 (11th Cir. 2023)). "Arguable probable cause exists . . . if a 'reasonable officer' presented with the corrected version of [an] affidavit could 'reasonably but mistakenly conclude that

probable cause is present' to suspect [the defendant]." *Id.* (quoting *Butler*, 85 F.4th at 1116).

Dalton fails to plausibly allege malicious prosecution. While Blitz rightly points out that Dalton "does not allege that there is any error or misstatement in the Arrest Affidavit," MTD. at 16, Dalton more fundamentally fails to allege that Blitz seized her pursuant to the arrest affidavit (or any other legal process), *see* Compl. ¶¶ 17, 23–33. A malicious prosecution claim "requires a seizure 'pursuant to legal process.'" *Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020) (quoting *Black v. Wigington*, 811 F.3d 1259, 1267 (11th Cir. 2016)). "[W]arrant-based seizures fall within this category," as do "seizures following an arraignment, indictment, or probable-cause hearing." *Id.* A warrantless arrest, on the other hand, is the quintessential seizure "without legal process." *Id.*; *see Kingsland v. City of Miami*, 382 F.3d 1220, 1235 (11th Cir. 2004); *Donley v. City of Morrow*, 601 F. App'x 805, 814 (11th Cir. 2015) (per curiam). Should she choose to file an amended complaint, Dalton must allege that Blitz seized her pursuant to legal process to state a claim for malicious prosecution.

### 3. Dalton's False Arrest and False Imprisonment Claims Are Dismissed

"To succeed on a false-arrest claim, a plaintiff must establish (1) a lack of probable cause and (2) an arrest." *Brooks v. Miller*, 78 F.4th 1267, 1281 (11th Cir. 2023). A "false imprisonment claim under § 1983 requires meeting the common law elements of false imprisonment and establishing that the imprisonment was a due process violation under the Fourteenth Amendment." *Helm v. Rainbow City*, 989 F.3d 1265, 1278 (11th Cir. 2021).[2]

A showing of either probable cause or arguable probable cause can defeat both. *See Edger v. McCabe*, 84 F.4th 1230, 1236 (11th Cir. 2023) (false arrest); *Skop v. City of Atlanta*, 485 F.3d 1130, 1138 (11th Cir. 2007) (same); *Helm*, 989 F.3d at 1278–79 (false imprisonment).[3] As noted above, "[w]hether an officer possesses probable cause or arguable probable cause depends on the elements of the alleged crime and the operative fact pattern." *Brown v. City of Huntsville*, 608 F.3d 724, 735 (11th Cir. 2010). Where a malicious prosecution claim focuses on the legal

---

[2] "The elements of common law false imprisonment are an intent to confine, an act resulting in confinement, and the victim's awareness of confinement." *Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009) (per curiam).

[3] Even if there is adequate justification for the initiation of the seizure, an officer may be liable for false imprisonment when the manner of detention is unreasonable. *See Helm*, 989 F.3d at 1280. Dalton's claim is not predicated on the manner of detention. *See* Compl. ¶¶ 34–40.

process, a false arrest claim "challenges as constitutionally deficient an officer's on-the-spot determination of probable cause." *Sylvester*, 94 F.4th at 1330. A false imprisonment claim shares the same inquiry. *See Helm*, 989 F.3d at 1279.

Dalton was arrested for, and later charged, with burglary of an occupied dwelling, burglary of a conveyance, and approaching a first responder with specified intent after a warning. Compl. ¶ 21; *see* (Doc. 1-1). Blitz argues that Dalton fails to plausibly allege that she was arrested without either probable cause or arguable probable cause. *See* MTD at 8–16. I agree.

As relevant, Florida law defines a "burglary" to mean "[e]ntering a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter." § 810.02(1)(b)(1), Fla. Stat. A person commits a second-degree felony when "in the course of committing the [burglary], the offender does not make an assault or battery and is not and does not become armed with a dangerous weapon or explosive, and the offender enters or remains in": (1) a "[d]welling, and there is another person in the dwelling at the time the offender enters or remains" or (2) a "[c]onveyance, and there is another person in the conveyance at the time the offender enters or remains." *Id.* § 810.02(3)(a), (d).

13

With respect to approaching a first responder, a person commits a second-degree misdemeanor when he, "after receiving a verbal warning not to approach from a person he or she knows or reasonably should know is a first responder, who is engaged in the lawful performance of a legal duty," "knowingly and willfully" violates this warning and "approach[es] or remain[s] within 25 feet of the first responder with the intent to":

    1. Impede or interfere with the first responder's ability to perform such duty;

    2. Threaten the first responder with physical harm; or

    3. Harass the first responder.

§ 843.31(2)(a), Fla. Stat. To "harass" means "to willfully engage in a course of conduct directed at a first responder which intentionally causes substantial emotional distress in that first responder and serves no legitimate purpose." *Id.* § 843.31(1)(b).[4]

As to all three offenses, Dalton fails to plausibly allege that Blitz arrested her without probable cause. Dalton alleges that Blitz arrived at the scene, "spoke with the ambulance attendants for approximately two minutes," threatened to arrest

---

[4] While no party mentions it, this offense did not take effect until almost two months after Dalton's arrest, *compare* Ch. 2024-85, § 2, Laws of Fla. ("This act shall take effect January 1, 2025."), *with* Compl. ¶¶ 8, 17 (explaining that Blitz arrested Dalton on November 9, 2024), though it was necessary to support all three charges, *see* § 810.02(1)(b)(1), Fla. Stat. (requiring intent to commit a separate offense in the burgled dwelling, structure, or conveyance as an element of burglary).

Dalton, and then did so. Compl. ¶¶ 15–17. Yet Dalton does not allege what facts, if any, were available to Blitz when she arrested Dalton. When assessing whether an officer arrested someone without probably cause, "[w]hat counts . . . is the information known to the defendant officers or officials at the time of their conduct." *Wilkerson v. Seymour*, 736 F.3d 974, 978 (11th Cir. 2013) (quoting *Jones v. Cannon*, 174 F.3d 1271, 1283 n.4 (11th Cir. 1999)). Dalton does not allege what, if anything, the ambulance attendants told Blitz, whether what they told Blitz was accurate, or whether someone else had relayed facts to Blitz prior to her arrival on the scene, whether accurate or inaccurate, of Dalton's conduct before she arrived on the scene. *See* Compl. Dalton's current pleading does not allege enough for the Court to determine whether she has plausibly alleged that Blitz arrested or falsely imprisoned her without probable cause. Accordingly, those claims are dismissed.

## IV.    CONCLUSION

Accordingly, the following is **ORDERED**:

1.    The Motion to Dismiss (Doc. 14) is **GRANTED.**

2.    The Complaint (Doc. 1) is **DISMISSED WITHOUT PREJUDICE.**

3.      Dalton may file an amended complaint addressing the above

deficiencies no later than **September 26, 2025.**

**ORDERED** in Tampa, Florida, on September 11, 2025.

Kathryn Kimball Mizelle
United States District Judge