**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**


ARIEL DALTON,

     Plaintiff,

v.                                                          Case No. 8:25-cv-1339-KKM-SPF

CITY OF LARGO and
OFFICER STEPHANIE BLITZ,

     Defendants.

_____

**<u>ORDER</u>**

The City of Largo and Officer Stephanie Blitz move to dismiss this

action, which arises from Blitz's arrest of Ariel Dalton. Mot. to Dismiss (MTD)

(Doc. 19). For the reasons below, I grant the motion.

## I.    BACKGROUND

On or about November 9, 2024, Dalton was driving to a friend's house for

dinner and needed to pick up her son from daycare. Am. Compl. (Doc. 18) ¶ 8.

On the way there, Dalton encountered a road blocked by an ambulance. *Id.* ¶ 9.

After waiting for five to ten minutes, Dalton approached the paramedics at a

nearby house and asked them to move the ambulance. *Id.* ¶ 10. Dalton stood

at the rear of the house's carport and did not attempt to enter either the carport

or the ambulance. *Id.* ¶ 11. The ambulance driver informed Dalton that he

would move the vehicle after loading the patient, so Dalton returned to her vehicle and waited. *Id.* ¶¶ 12–13.

After the patient was loaded into the ambulance, Dalton again approached to request that the vehicle be moved. *Id.* ¶ 14. About two minutes later, Officer Blitz appeared on the scene. *Id.* ¶ 15. After speaking with the ambulance attendants for about two minutes, Blitz arrested Dalton. *Id.* ¶¶ 16, 19. "[T]he ambulance attendants falsely told Officer Blitz that [Dalton] had entered the patient's home without permission and had attempted to enter the ambulance by pulling on the door handles." *Id.* ¶ 17. Blitz arrested Dalton without asking Dalton about her version of events or otherwise conducting an "independent investigation to verify the ambulance attendants' claims." *Id.* ¶ 18. Blitz completed arrest affidavits that contained the "false information provided by the ambulance attendants, which was used as the basis for formal charges against" Dalton. *See id.* ¶ 20; Arrest Affs. (Doc 14-1). On the way to the Pinellas County Jail, Blitz told Dalton that she arrested her "because [Dalton] thought [she was] better than [Blitz]." Am. Compl. ¶ 21. Dalton was charged with burglary of an occupied dwelling, burglary of a conveyance, and approaching a first responder with specified intent after a warning. *Id.* ¶ 24; *see* (Doc. 1-1). These charges were later dropped. Am. Compl. ¶ 25; (Doc. 1-1).

In the two years preceding Dalton's arrest, Blitz received three civilian complaints that alleged that Blitz failed to conduct proper investigations and

2

made arrests without probable cause. Am. Compl. ¶ 26. These complaints did not prompt corrective action from the City. *Id.* ¶ 27.

I granted the defendants' previous motion to dismiss Dalton's original complaint, which failed to state a claim. Order (Doc. 16).

In her amended complaint, Dalton pleads five claims: malicious prosecution against the City and Blitz under 42 U.S.C. § 1983 (Count I); false imprisonment against the City and Blitz under Section 1983 (Count II); an unreasonable seizure in violation of the Fourth Amendment against the City and Blitz (Count III)[1]; "municipal liability for constitutional violations" under Section 1983 against the City (Count IV); and negligent supervision against the City (Count V). *Id.* ¶¶ 28–70. The defendants move to dismiss. *See* MTD. Dalton responds in opposition. *See* Resp. (Doc. 21). Although the motion could be treated as unopposed—because Dalton untimely filed her response—I treat the motion as opposed and consider Dalton's arguments in response. *See* Local Rule 3.01(d) ("If a party fails to timely respond, the motion is subject to treatment as unopposed.").

---

[1] As I did in the order granting the defendants' previous motion to dismiss, and as the parties have done throughout this litigation, I construe this as a Section 1983 claim for false arrest. *See, e.g.*, MTD at 2, 4, and 17 (construing the claim as a Section 1983 claim for false arrest); Resp. at 7 (calling the claim an "unreasonable seizure claim," describing the elements of the claim, which essentially match those of a Section 1983 false arrest claim, and not contesting the defendants' construction of the claim); Resp. at 8 (arguing for municipal liability under Section 1983, including for the "unreasonable seizure" claim).

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss" for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"In analyzing the sufficiency of the complaint," I may consider "well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004), *abrogated on other grounds by Twombly*, 550 U.S. 544. The complaint's factual allegations are accepted "as true" and

4

construed "in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

## III.  ANALYSIS

Blitz and the City move to dismiss. I start with the claims against Blitz and then move to the claims against the City.

### A. Dalton's Claims against Blitz are Dismissed

Dalton pleads malicious prosecution, false imprisonment, and false arrest claims against Blitz. *See* Am. Compl. ¶¶ 28–52. Blitz argues that she is entitled to qualified immunity because there was probable cause or arguable probable cause to arrest Dalton, thus there was no violation of Dalton's constitutional rights and Dalton's claims must be dismissed. *See* MTD at 12–19.

### 1.  Qualified Immunity Standard

"The qualified immunity defense shields 'government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) (citation modified).

"To receive qualified immunity, [a] public official 'must first prove that he was acting within the scope of his discretionary authority when the

5

allegedly wrongful acts occurred.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee*, 284 F.3d at 1194.

As a threshold matter, "it is undisputed that [Blitz] [was] acting within the scope of [her] discretionary authority" when she arrested Dalton. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199 (11th Cir. 2007); *see* MTD at 13 (claiming that Blitz acted "in her discretionary capacity when she arrested [Dalton]"); Resp. at 4–6 (raising other arguments regarding qualified immunity but not disputing that Blitz acted within the scope of her discretionary authority). Thus, Dalton "bears the burden of overcoming [Blitz's] qualified immunity defense." *Irvin*, 496 F.3d at 1199.

"To overcome a qualified immunity defense, the plaintiff must make two showings." *Corbitt*, 929 F.3d at 1311. The plaintiff must first show "that the defendant violated a constitutional right." *Irvin*, 496 F.3d at 1199. The plaintiff must then "show that the violation was clearly established." *Id.* "A right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so

6

egregious that a constitutional right was clearly violated, even in the total absence of case law." *Gilmore v. Ga. Dep't of Corr.*, 144 F.4th 1246, 1258 (11th Cir. 2025) (en banc) (quoting *T.R. by and through Brock v. Lamar Cnty. Bd. of Ed.*, 25 F.4th 877, 883 (11th Cir. 2022)). For this second inquiry, the key question "is whether the state of the law gave the defendants 'fair warning' that their alleged conduct was unconstitutional." *Vaughan v. Cox*, 343 F.3d 1323, 1332 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

Ordinarily, "it is proper to grant a motion to dismiss on qualified immunity grounds when the 'complaint fails to allege the violation of a clearly established constitutional right.' " *Corbitt*, 929 F.3d at 1311 (quoting *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002)). "Once an officer has raised the defense of qualified immunity, the burden of persuasion on that issue is on the plaintiff." *Id.* (quoting *St. George*, 285 F.3d at 1337).

### 2. The Arrest Affidavits Were Not Constitutionally Infirm

Dalton was arrested for, and later charged with, burglary of an occupied dwelling, burglary of a conveyance, and approaching a first responder with specified intent after a warning. Am. Compl. ¶ 24; *see* (Doc. 1-1). Blitz argues that Dalton's amended complaint shows that the legal process used to seize Dalton—the arrest affidavits—was not constitutionally infirm because the affidavits were supported by probable cause, or at least arguable probable

7

cause. *See* MTD at 14–19. I agree that the affidavits were not constitutionally infirm.

As relevant, Florida law defines a "burglary" to mean "[e]ntering a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter." § 810.02(1)(b)(1), Fla. Stat. A person commits a second-degree felony when "in the course of committing the [burglary], the offender does not make an assault or battery and is not and does not become armed with a dangerous weapon or explosive, and the offender enters or remains in": (1) a "[d]welling, and there is another person in the dwelling at the time the offender enters or remains" or (2) a "[c]onveyance, and there is another person in the conveyance at the time the offender enters or remains." *Id.* § 810.02(3)(a), (d).

With respect to approaching a first responder, a person commits a second-degree misdemeanor when he, "after receiving a verbal warning not to approach from a person he or she knows or reasonably should know is a first responder, who is engaged in the lawful performance of a legal duty," "knowingly and willfully" violates this warning and "approach[es] or remain[s] within 25 feet of the first responder with the intent to":

> 1. Impede or interfere with the first responder's ability
> to perform such duty;
> 2. Threaten the first responder with physical harm; or

3. Harass the first responder.

§ 843.31(2)(a)–(b), Fla. Stat. To "harass" means "to willfully engage in a course of conduct directed at a first responder which intentionally causes substantial emotional distress in that first responder and serves no legitimate purpose." *Id.* § 843.31(1)(b).

To succeed on a malicious prosecution claim, a plaintiff must prove both "(1) the elements of the common-law tort of malicious prosecution and (2) a violation of his Fourth Amendment right to be free from unreasonable seizures." *Blue v. Lopez*, 901 F.3d 1352, 1357 (11th Cir. 2018).[2] Or, as the Eleventh Circuit recently articulated, a plaintiff must prove: (1) "the legal process justifying [the plaintiff's] seizure was constitutionally infirm"; (2) the "seizure would not otherwise be justified without legal process"; and (3) "the criminal proceedings against [the plaintiff] terminated in his favor." *Sylvester v. Fulton Cnty. Jail*, 94 F.4th 1324, 1329 (11th Cir. 2024) (alterations in the original) (quoting *Luke v. Gulley*, 975 F.3d 1140, 1144 (11th Cir. 2020)).

A showing of either probable cause or arguable probable cause defeats a malicious prosecution claim. *See id.* at 1331. The probable cause inquiry

---

[2] "[T]he constituent elements of the common law tort of malicious prosecution include[]: (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Paez v. Mulvey*, 915 F.3d 1276, 1285 (11th Cir. 2019) (alterations in the original) (quoting *Wood v. Kesler*, 323 F.3d 872, 882 (11th Cir. 2003)).

regarding malicious prosecution focuses on "the legal process that justified the plaintiff's arrest and the defendant's role in that process." *Id.* at 1330. Therefore, the proper analysis requires a court to "remove from the affidavit any false or misleading inculpatory statements, insert any omitted exculpatory information, and then assess whether the corrected affidavit is still able to establish at least arguable probable cause." *Id.* at 1331. To assess probable cause, a court must "look to the elements of the underlying crime—and in particular, in a malicious-prosecution case like this one, to the elements of the *charged* crime." *Butler v. Smith*, 85 F.4th 1102, 1116 (11th Cir. 2023). "Probable cause requires facts that allow 'a person of reasonable caution to believe' that 'there was a substantial chance' that [the defendant committed the charged offense]." *Sylvester*, 94 F.4th at 1331 (quoting *Garcia v. Casey*, 75 F.4th 1176, 1186 (11th Cir. 2023)). "Arguable probable cause exists . . . if a 'reasonable officer' presented with the corrected version of [an] affidavit could 'reasonably but mistakenly conclude that probable cause is present' to suspect [the defendant]." *Id.* (quoting *Butler*, 85 F.4th at 1116).

Dalton fails to plausibly allege malicious prosecution. As Blitz notes, all that is at issue is the element of constitutional infirmity of the legal process. MTD at 14. "Legal process is constitutionally infirm if the officer who provided the probable cause affidavit intentionally or recklessly made misstatements or omissions necessary to support the warrant." *Sylvester*, 94 F.4th at 1329

10

(citation modified). "The plaintiff must first explain how any inaccuracies were material, *i.e.*, 'necessary to support the warrant.'" *Id.* (quoting *Luke*, 50 F.4th at 95–96). In other words, "[i]f the affidavit still manages to establish probable cause for the crime charged even after correcting the defendant's purported lies, misleading statements, and omissions, then" the inaccuracies were immaterial. *See id.* at 1330. Next, "there must be evidence in the record that would allow a reasonable jury to find that the inaccuracies in the affidavit did not result from a 'reasonable mistake' but stemmed from intentional or reckless deception." *Id.*

I consider the three arrest affidavits because, although Dalton does not attach them to her amended complaint, she repeatedly references them in her complaint, and they are central to her malicious prosecution claim. *See* Am. Compl. ¶¶ 20, 30, 32, 36; *La Grasta*, 358 F.3d at 845. Dalton arguably did not allege that the inaccuracies were material, but I liberally construe her allegation that "[t]here was no probable cause for the proceeding because [Dalton] did not enter the carport or attempt to enter the ambulance, contrary to what Officer Blitz alleged in the arrest affidavit[s]" as sufficiently alleging this element.[3] *See* Am. Compl. ¶ 36. And, although neither party discusses it

---

[3] Dalton does not contest that what the ambulance attendants told Blitz was, if true, sufficient for probable cause. *See* MTD at 16–17 (arguing that the statements suffice for probable cause); Resp. at 4 (arguing only that the statements were insufficient because they were false).

directly in their papers, the alleged inaccuracies in the affidavits are material. The inaccurate facts make up most of the affidavits and nearly all the potentially inculpatory facts.[4] *See* Arrest Affs. at 1, 3, 5. Removing those facts renders the affidavits incapable of establishing probable cause or arguable probable cause for the burglaries and approaching a first responder with specified intent after warning.[5]

It is the second step—that a reasonable jury must be able to find that the inaccuracies stemmed from intentional or reckless deception rather than reasonable mistake—where Dalton falters. To begin, the amended complaint

---

[4] The arrest affidavit for the approaching a first responder charge includes one separate inculpatory fact: that upon Blitz's arrival, she could see Dalton "actively blocking the ambulance's only exit path . . . which prevented them from readily and speedily responding to the hospital with a patient." Arrest Affs. at 5. Even still, this fact alone does not suffice for probable cause because the offense requires the perpetrator to have first received a verbal warning. *See* § 843.31(2)(a), Fla. Stat.

[5] Despite my raising it *sua sponte* in the order granting the previous motion to dismiss, *see* Order at 14 n.4, both parties again ignore that the approaching a first responder offense did not take effect until almost two months after Dalton's arrest, *compare* Ch. 2024-85, § 2, Laws of Fla. ("This act shall take effect January 1, 2025."), *with* Am. Compl. ¶¶ 8, 19 (explaining that Blitz arrested Dalton on November 9, 2024), though it was necessary to support all three charges, *see* § 810.02(1)(b)(1), Fla. Stat. (requiring intent to commit a separate offense in the burgled dwelling, structure, or conveyance as an element of burglary). Had Dalton raised the issue, Blitz's apparent belief that the offense, which was duly enacted and approved by the Governor of Florida on April 12, 2024, was in effect on November 9, 2024, would have been a reasonable mistake of law. *See Mahone v. Georgia*, No. 20-14752, 2022 WL 2388426, at *3 (11th Cir. July 1, 2022) (per curiam) ("An officer's reasonable mistake of law—that is, when 'the law turns out to be not what was thought'—can justify probable cause." (citing *Heien v. North Carolina*, 574 U.S. 54, 61–64 (2014))); *Smith v. City of Fairburn,* 679 F. App'x 916, 923 (11th Cir. 2017) (per curiam) ("[A] reasonable mistake of law does not destroy probable cause.").

12

does not even allege that Blitz intentionally or recklessly made false statements or omitted exculpatory information in the arrest affidavit. *See* Am Compl. ¶¶ 29–40. Instead, the amended complaint alleges that *the ambulance attendants* made false statements, which Blitz relied on and repeated in the arrest affidavit. *See id.* ¶¶ 17–20, 28, 36. Rather than allege that Blitz lied or made misleading statements, Dalton takes issue with Blitz's failure to "question [Dalton] about her version of events or conduct any independent investigation to verify the ambulance attendants' claims before deciding to arrest [Dalton]." *See id.* ¶¶ 18, 28; *see, e.g.*, Resp. at 6 ("Blitz deliberately ignored available exculpatory evidence and failed to conduct even a minimal investigation . . . ."). Despite arguing in her response that Blitz ignored exculpatory evidence "in the form of video recordings," Resp. at 5, Dalton never explains what these recordings show, how Blitz was aware of them, or how Blitz could have accessed them at the scene or at any time before Blitz completed the arrest affidavits. More to the point, there are no such allegations in the amended complaint.

To be sure, "[a]n arresting officer is required to conduct a reasonable investigation to establish probable cause." *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998). "While an officer is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest, an officer may not choose to ignore information that has been offered to him or

her." *Washington v. Rivera*, 939 F.3d 1239, 1246 (11th Cir. 2019) (citation modified). That said, "reliance upon eyewitness testimony, including that of a victim of a crime, is [generally] sufficient to establish probable cause." *Scott v. City of Miami*, 139 F.4th 1267, 1274 (11th Cir. 2025).

Dalton's allegations show that Blitz *did* conduct a reasonable investigation to establish probable cause. Upon arriving at the scene, Blitz spoke to the ambulance attendants who told her "that [Dalton] had entered the patient's home without permission and had attempted to enter the ambulance by pulling on the door handles." Am. Compl. ¶¶ 15–17. Although Blitz could have conducted a more in-depth investigation, she did not have to. Blitz's decision to not investigate further was reasonable, particularly under the circumstances—the ambulance was loaded with a patient waiting for transport to a medical facility. *See id.* ¶ 14.

Contrary to making allegations sufficient for a reasonable jury to find that the inaccuracies in the affidavit stemmed from intentional or reckless deception instead of a reasonable mistake, Dalton's allegations leave inescapable the conclusion that the inaccuracies were caused by a reasonable mistake. When Blitz repeated the allegedly inaccurate facts in the arrest affidavits, she relied on the ambulance attendants' statements. This was sufficient to establish probable cause. *See Scott*, 139 F.4th at 1274; *United States v. Gonzalez*, 969 F.2d 999, 1006 (11th Cir. 1992) ("A policeman's

14

mistaken belief of fact can properly contribute to a probable cause determination and can count just as much as a correct belief as long as the mistaken belief was reasonable in the light of all the circumstances."). As noted above, there are no allegations that Blitz ignored exculpatory information offered to her. Nor does Dalton allege any facts that give rise to an inference that Blitz should have suspected that the ambulance attendants' statements were inaccurate. *See* Am. Compl. ¶¶ 1–40. Further, there are no allegations that Dalton challenged the veracity of the ambulance attendants' statements at the scene, at the time of Dalton's arraignment, or even at any point prior to filing the amended complaint. *See generally id.*; *see also* MTD at 16 (making this argument); Resp. at 4–7 (failing to dispute the defendants' argument). In the light of Dalton's allegations, it was a reasonable mistake for Blitz to repeat in the arrest affidavits the ambulance attendants' inaccurate statements.

Dalton fails to allege facts plausibly showing that the legal process used to arrest her was constitutionally infirm. That is fatal to her malicious prosecution claim. Blitz is entitled to qualified immunity as to Count I because it "fails to allege the *violation* of a clearly established constitutional right." *Corbitt*, 929 F.3d at 1311 (emphasis added).

15

### 3. Probable Cause and Arguable Probable Cause Existed When Blitz Seized Dalton at the Scene

"To succeed on a false-arrest claim, a plaintiff must establish (1) a lack of probable cause and (2) an arrest." *Brooks v. Miller*, 78 F.4th 1267, 1281 (11th Cir. 2023). A "false imprisonment claim under § 1983 requires meeting the common law elements of false imprisonment and establishing that the imprisonment was a due process violation under the Fourteenth Amendment." *Helm v. Rainbow City*, 989 F.3d 1265, 1278 (11th Cir. 2021).[6]

A showing of either probable cause or arguable probable cause can defeat both. *See Edger v. McCabe*, 84 F.4th 1230, 1236 (11th Cir. 2023) (false arrest); *Skop v. City of Atlanta*, 485 F.3d 1130, 1138 (11th Cir. 2007) (same); *Helm*, 989 F.3d at 1278–79 (false imprisonment). As noted above, "[w]hether an officer possesses probable cause or arguable probable cause depends on the elements of the alleged crime and the operative fact pattern." *Brown v. City of Huntsville*, 608 F.3d 724, 735 (11th Cir. 2010). Where a malicious prosecution claim focuses on the legal process, "[a] 'false arrest' claim challenges as constitutionally deficient an officer's on-the-spot determination of probable cause." *Sylvester*, 94 F.4th at 1330. A false imprisonment claim shares the same inquiry. *See Helm*, 989 F.3d at 1279. When assessing whether an officer

---

[6] "The elements of common law false imprisonment are an intent to confine, an act resulting in confinement, and the victim's awareness of confinement." *Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009) (per curiam).

16

arrested someone without probable cause, "[w]hat counts . . . is the information known to the defendant officers or officials at the time of their conduct." *Wilkerson v. Seymour*, 736 F.3d 974, 978 (11th Cir. 2013) (quoting *Jones v. Cannon*, 174 F.3d 1271, 1283 n.4 (11th Cir. 1999)).

Although the relevant inquiry differs from malicious prosecution, the result is the same. As explained above, Blitz's investigation on the scene was reasonable, and the ambulance attendants' statements were sufficient to provide Blitz with "facts and circumstances . . . sufficient to warrant a reasonable belief that [Dalton] had committed or was committing [the charged] crime[s]." *Case v. Eslinger*, 555 F.3d 1317, 1327 (11th Cir. 2009) (quoting *Gonzalez*, 969 F.2d at 1002); *see also Scott*, 139 F.4th at 1274; *Gonzalez*, 969 F.2d at 1006. Further, "reasonable officers in the same circumstances and possessing the same knowledge as [Blitz] could have believed that probable cause existed to arrest." *Case*, 555 F.3d at 1327 (quoting *Lee*, 284 F.3d at 1195). Thus, Blitz had probable cause and arguable probable cause when she seized Dalton at the scene. Dalton's false arrest and false imprisonment claims against Blitz fail. Blitz is entitled to qualified immunity regarding Counts II and III because they, like Count I, also "fail[] to allege the *violation* of a clearly established constitutional right." *Corbitt*, 929 F.3d at 1311 (emphasis added).

17

**B. Dalton's Claims against the City of Largo are Dismissed**

Dalton pleads against the City four claims under Section 1983 and one state law claim. All five must be dismissed.

Starting with the federal claims, a municipality "does not incur § 1983 liability for injuries caused solely by its employees." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). "Instead, to impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Id.*

As a threshold matter, Count IV, which purports to assert a general claim for municipal liability under Section 1983, is dismissed with prejudice because it is not a separate cause of action. *See* Am. Comp. ¶¶ 53–59. Even if it were a standalone cause of action, the Count fails to allege which of Dalton's constitutional rights were violated. *See id.*; *Paez v. Mulvey*, 915 F.3d 1276, 1285 (11th Cir. 2019) ("A constitutional claim brought pursuant to § 1983 must begin with the identification of a specific constitutional right that has allegedly been infringed."). I liberally construe the allegations related to municipal liability as arising under each of Counts I–III, as Dalton appears to have intended. *See* Resp. at 2–3, 8 (arguing that the facts alleged across the

18

complaint suffice for showing municipal liability for each of the claims in Counts I–III).

The City argues that each of the claims against it fail to state a claim. MTD at 4. Specifically, although a plaintiff can prove that a municipality has a custom or policy constituting deliberate indifference to a constitutional right by showing "[a] pattern of similar constitutional violations," *Craig v. Floyd County*, 643 F.3d 1306, 1310 (11th Cir. 2011) (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)), the City argues that Dalton's allegation of "three unsubstantiated complaints filed against Officer Blitz" is insufficient to establish such a pattern, MTD at 8. I need not consider this argument because there is a more fundamental error—Dalton fails to show that her constitutional rights were violated. As explained above, Dalton's claims for malicious prosecution, false arrest, and false imprisonment all fail. The first because the legal process used to seize Dalton was not constitutionally infirm and the latter two because Blitz had probable cause and arguable probable cause. Without those underlying violations, there cannot be municipal liability. *See, e.g.*, *Knight through Kerr v. Miami-Dade County*, 856 F.3d 795, 821 (11th Cir. 2017) ("There can be no policy-based liability or supervisory liability when there is no underlying constitutional violation." (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).

19

Dalton's negligent supervision claim also fails. Negligent supervision or retention "occurs when during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions such as investigation, discharge, or reassignment." *Dep't of Env't Prot. v. Hardy*, 907 So. 2d 655, 660 (Fla. 5th DCA 2005). "The plaintiff must allege facts sufficient to show that once an employer received actual or constructive notice of problems with an employee's fitness, it was unreasonable for the employer not to investigate or take corrective action." *Id.* Of course, "not only must the employer owe a duty to the plaintiff, but the breach of that duty must be the proximate cause of the plaintiff's harm." *Id.* As a result, "[t]here must be a connection and foreseeability between the employee's employment history and the current tort committed by the employee." *Id.* at 661. "Under Florida law, a claim for negligent hiring, retention, or supervision requires that an employee's wrongful conduct be committed outside the scope of employment." *Buckler v. Israel*, 680 F. App'x 831, 834 (11th Cir. 2017) (per curiam) (first citing *Mallory v. O'Neil*, 69 So. 2d 313, 315 (Fla. 1954); and then citing *Delaurentos v. Peguero*, 47 So. 3d 879, 882 (Fla. 3d DCA 2010)).

To begin, Dalton does not allege or explain how Blitz acted outside the scope of her employment. *See* Am. Compl. ¶¶ 60–70; Resp. at 7–8. That alone is grounds for dismissal. *See, e.g.*, *King v. Marceno*, No. 2:24-CV-375-KCD-

DNF, 2025 WL 3012682, at *5–6 (M.D. Fla. Oct. 28, 2025) (dismissing negligent supervision claim in part for failing to allege that the employee's acts were outside the scope of employment); *Viera v. City of Lake Worth*, No. 19-80158-CIV, 2020 WL 13644556, *5 (S.D. Fla. Mar. 31, 2020) (same).

Further, "[i]t is necessary that the underlying wrong—the actions of the employee or servant—be a tort." *Acts Ret.-Life Cmtys. Inc. v. Est. of Zimmer*, 206 So. 3d 112, 115 (Fla. 4th DCA 2016). Dalton does not clearly identify the tort or torts on which she bases her negligent supervision claim. *See* Am. Compl. ¶¶ 60–70. Her allegations sound in false arrest and false imprisonment, not malicious prosecution. *See id.* (complaining of "arrest without probable cause" and "unlawful arrest[ and] detention" while not mentioning the affidavits or legal process used to seize her); Resp. at 7–8 (same). "The existence of probable cause constitutes an affirmative defense to the claims of false arrest and imprisonment under Florida law." *Rankin*, 133 F.3d at 1436. As explained above, Blitz had probable cause to arrest Dalton at the scene. Thus, Dalton's negligent supervision claim also fails for the same reason as her Section 1983 claims against the City.

## IV.   CONCLUSION

Because Blitz is entitled to qualified immunity as to Counts I–III against her, they are dismissed with prejudice as to Blitz. *See Hardy v. Broward Cnty. Sheriff's Off.*, 238 F. App'x 435, 444 (11th Cir. 2007) (per curiam) (affirming

grant of a motion to dismiss without leave to amend on qualified immunity grounds when the plaintiffs "failed to establish that the [defendants] violated clearly established constitutional law").

Count IV is dismissed with prejudice because it is not a cause of action and granting leave to amend would be futile. *See Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1133 (11th Cir. 2019). Counts I–III and V are similarly dismissed with prejudice as to the City because amendment would be futile because Blitz had probable cause to arrest Dalton.

Even if all Counts were dismissed merely for failure to state a claim, I would do so with prejudice because Dalton already had a chance to amend her complaint to properly state a claim, and Dalton has not requested leave to file a second amended complaint. *See Gurrera v. Palm Beach Cnty. Sheriff's Off.*, 657 F. App'x 886, 894 n.5 (11th Cir. 2016) (per curiam) ("Our precedent does not require affording *pro se* plaintiffs multiple opportunities to amend.").

Accordingly, the following is **ORDERED**:

1. The Motion to Dismiss (Doc. 19) is **GRANTED.**

2. The Amended Complaint (Doc. 18) is **DISMISSED with prejudice.**

3. The Clerk is directed to **ENTER JUDGMENT**, which shall read "This case is dismissed with prejudice."

22

23

**4.** The Clerk is further directed to **TERMINATE** any deadlines and motions and to **CLOSE** this case.

**ORDERED** in Tampa, Florida, on March 17, 2026.

Kathryn Kimball Mizelle
United States District Judge

23